Court would like to commend counsel for making extra efforts to be here on a difficult day. It obviously reflects your professional responsibility and appreciation for the court schedule, so we do appreciate it. We have four cases today. Patent case, reexamination case from the Patent Office, a trademark case from the Patent and Trademark Office, patent case from the District Court, and a government employee case from the MSPB, which is submitted on the briefs and not being argued. Our first case, and I understand the counsel have agreed on a bit of an irregular time frame, which is just fine with us, and Mr. Lankfitt will speak for eight minutes and reserve three, and then we'll hear from appellee counsel. Please, Mr. Lankfitt. This is Q.I. Press Controls v. the PTO and Qualtech 2012, 1360 and 1361. Mr. Lankfitt. Good morning, Your Honors. My name is David Lankfitt. I represent Q.I. Press Controls, the appellant. Given that I have eight minutes, I want to get straight to the point. I think that the main question, the overarching question here is whether the multidirectional LED lighting and apparatus with a camera lens in the 423 patent is an invention worthy of a patent or is it obvious based on prior art. Specifically, is that ring of LEDs something new or inventive, or is it an arrangement such as the last puzzle piece in a jigsaw puzzle that was simply put in place based on known and obvious art. Is there an explanation that eluded me for why the examiner relied on Mariyama and Ross with respect to claims 1 through 60 and Sino plus Ross only with respect to claims 61 through 72? No, I don't believe that I have the explanation, Your Honor. I know that the representative, the attorney for the office is here. However, I would submit that it could well be relied on. Mariyama could be relied on in rejecting claims 61 to 72. I think it should have been relied on. The more pertinent question is why wasn't Sino relied on in connection with the first 60? Your Honor, I think it should have been. I don't think that there's any distinction. I think if you look at the prior art patents with respect to CMOS design. Sino discloses, I take it, a printing press with an illumination system. Correct. I believe it's a standard illumination system. It's certainly not an LED illumination system. I think it's very important to note that this entire thing is an apparatus that is not a printing press. It is an add-on. It is sold as a separate device that has a camera, a computer, and an illumination system, and that's what it is. I think if you look at the other prior art patents, they are in some equivalent to Sino. They teach what Sino teaches. It is a mystery to me why Sino was not cited. Okay, well, that's the answer to my question. And that Rippenhoff, Helmrich, etc. were not cited from 61 to 72. I think they should have been. And I think that, apropos of Your Honor's question, if you look to the written opinion— So you should be arguing that, for consistency, we should reverse the point you're arguing and uphold the cross-appeal. No. No. No, Your Honor. What I am saying is that you should uphold— You think the board should get a remand to consider Sino and reject the claims. Yes. Yes. Reject all the claims. Right. Though I would say that the remand shouldn't necessarily simply have the board reconsider Sino. I would prefer that the panel consider Sino and all the prior art patents that were cited. Well, we're not a super board. We've got a new world with these examination cases and the Patent Office defending patentability. We shouldn't be the fact finder and making initial rejections. Well, certainly, Your Honor, based on the powers that you've stated the court has, yes, remand the entire case for consideration of Sino. And we believe that right in the opinion that the board wrote, with respect to claims 61 to 72, the board got it right. That's what I was suggesting, that you would wish. Yes. Exactly. There's a second issue, which I thought you were going to focus on more than Sino, which is Ross. And Ross, the board seems to have found it to be analogous art in respect to 61 through 72, but said nothing about Ross as analogous art with respect to 1 through 60. I think that's an error. And is there any explanation for that as far as you can tell? I can't see the explanation. I think that it's an error. And I think that what happened, strangely, in the first 60 claims is that the board erred by somehow elevating the term printing press into a dispositive claim within the claims. And it's not. But does Ross really affect that analysis? I mean, isn't the point of 1 through 60 that they looked at Moriyama and said it's limited to printing press? So whether you have the LED lights from Ross or not, Moriyama doesn't teach printing press. It does not teach printing press, but printing press is not the apparatus disclosed. It is an application. And the apparatus disclosed, and it's very specific in the claims and in the preambles to the claims. Can I ask, did you or anybody raise Sanio with respect to claims 1 or 60? I believe that it was raised within the examiner's report. Is there any where in the record you can point me to that? I didn't see it. Off the top of my head, I cannot. But Sanio clearly was part of the record, and it was the examiner referred to it. But did he refer to it with regard to claims 1 through 60 or just 61 through 72? I can't recall, Your Honor. The examiner was a woman, just for the record, and I believe that the examiner was well aware of that. But even if it's not referred to in 1 through 60, our contention is that if you look at all the other prior art patents that are referred to, Riefenhoff, Helmreich, Hansen, et cetera, some of which are actually owned by QuadTech or licensed to QuadTech, they all are essentially the equivalent of Sanio. Your position, I take it, is that even if you're incorrect with respect to your submission that a printing press is not a limitation of the claims, that even then you go to Ross's analogous art, and because it's analogous art, you don't have to have the actual disclosure of a printing press. Unless it's good enough to have disclosure in an analogous art field of the device, the illumination device that Ross displays. I would agree with that. That's your point, correct? That is the point. All right, and go ahead. But even more to the point, there is nothing in the apparatus and in the claims that describe the apparatus that is dependent on a printing press. If you look at that apparatus and the claims that describe it, it can function, first of all, number one, and admittedly by QuadTech, on any printing press. There you run into the waiver argument that's been raised by your opponents, and I read the section of your brief to the board in which you claimed that you raised this issue, and I frankly did not find that to be, at best, it was a very opaque sort of allusion to this argument. It certainly wasn't an argument that was made as directly as you're making it now. No, it was not made, but our contention is that it was made sufficient to give notice that that printing press had no patentable weight, and But even aside from waiver, you've got a system configured to be an optical communication with a substrate of a printing press, and then you've got the next limitation configured to record images printed on the substrate, obviously referring to the substrate of the printing press. How can it not be a limitation of the claims? The reason it's not a limitation of the claims is that, first of all, let's be clear, even in the introductory sections regarding the invention, a substrate is almost always a piece of paper. No different from the paper that is fed through in Moriyama, really no different from the bills that get fed through in Ross. It's not structural to the visual inspection system. And even the cases that Mr. Lowery cites, Pitney Bowes, as well as, I believe, PolyAmerica, in both cases where there's a preamble that is contended not to be a claim and found to be a limitation on the claim, in both instances, the Court decided that you could not interpret and understand the actual claims without reference to the specific preamble. That, in fact, those claims were modified by the preamble. And I think in this case, you will see that there is nothing about a printing press that modifies the device that's disclosed here. Well, that may be, but I'm not sure you answered Judge Lowery's question, which was not whether in the general law of preambles and whether they're limiting or not, this falls on one side of the line or another, but rather, structurally, this claim recites a substrate of a printing press and then the substrate, obviously referring back to the substrate of the printing press, or at least so it would seem. Why isn't that the correct reading of the claim such that we should read this claim as if one of the express limitations was in a printing press? Your Honor, even if the Court were to read it that way, I don't think it's dispositive of this case. Well, okay, I understand the alternative argument, but my question is, if you can get back to Judge Lowery's question, why doesn't the combination of substrate of a printing press and the substrate settle the deal with respect to whether the printing press is a limitation of the claim? It may settle the deal, so to speak. However, even if a limitation, it is still an application, and the device that's disclosed is a standalone device that can be applied to many different processes. Mr. Lankford, we've challenged you with questions. We'll give you your three minutes back, but we should hear from appellee counsel now. Thank you. Mr. Lowery with a W? Yes, Your Honor. Thank you. Okay, and you're going to split eight and eight with Mr. Johnson and then try to retain three for cross-appeal. Yes, Your Honor. Matthew Lowery for Quad. Just a brief comment to put this into context. The invention relates to printing presses 1,000 feet per second, 1.7 microseconds to take a picture. The Ross reference relates to an ATM where you're feeding dollars in, and you're illuminating not all at once, but you're doing this kind of reds and then greens kind of along the length of the bill, which generates this funky signature that they're using to make sure it's not a counterfeit. Those are the references. You know, you rely on this notion that the printing press is this gigantic thing which moves paper at a very rapid rate. That's not all printing presses. I mean, I used to work in maintenance of printing presses, and this is many years ago, but some of them are actually quite slow. So the world of printing press is not defined entirely by something that is as remote from, let's say, the laser printer of Mariyama or even the paper moving in the Ross device, it seems to me. An excellent point, Your Honor, and let me magnify that out. I'm reminded of my second argument. My first argument was in front of Judge Leir where Judge Stein said, if I ask a question that means it's excellent, then he was, of course, right. The printing press that goes slow, you would never do this with. It's not obvious to do that in a slow printing press. You know, you can use an incandescent light, for example. So we're not talking about that kind of a… But this reads on such a printing press. I mean, if somebody infringed your device in a slow printing press, you'd sue them. But such a printing press, I don't know if we would, but such a printing press would never be, it would not render it obvious. So if you're looking at the prior art for that kind of a printing press, you wouldn't look that way. If you're looking at prior art where you would want something more, such as the specific system in the patent, you'd never look at Ross. That's the point. It's not the scope of the claim. It's the prior art that wouldn't be combined. Because what the prior art would show would be, not Mar-a-Yam, obviously. It's not a printing press. But even if you had a press that were slow, there's no suggestion that that slow type of press you would actually use an illumination system that's beyond anything that was already out there in the prior art. Well, why wasn't Sanyo cited here? Claims 1 of 60. So the ultimate why is hard to say. The question, because it wasn't me or the examiner, so I don't know personally. You could ask the other side because they're the ones that filed the petition. What we do know is that it was not relied on by the examiner. The issue that was put to the board... And you just said that it wasn't cited by the protester. I don't know that for certain because I didn't check that last night. But what I do know for certain is, it may or may not have been. I honestly just don't know and I don't want to say something that's incorrect. However, what is certain is that the examiner did not cite it for the board, that QI did not cross-appeal the examiner's determination, that QI before the board did not propose that the board should adopt a new ground of rejection based on Sanyo. But you agree that there's an inconsistency between dealing with claims 1 of 60 and 61 of 72. I would agree that there could be, but again, the board actually didn't examine that because that argument was not made to the board, nor was any argument, as I said, for a new ground of rejection. How will you two ignore that? Well, the limitations aren't the same. They're pretty close. They are close. But I thought your brief more or less explicitly disagrees, certainly disagrees with the solicitor with respect to the analogous art of Ross. You say Ross is not analogous art. Yes. The board seems to have said, and the solicitor says it did say, that with respect to 61 through 72, it is analogous art. So you take issue with the board, or at least with the solicitor in that regard, correct? That is correct. And in fact, we would say that in connection with claims 61 to 72, where Sanyo actually was put in play, and this goes back to even this court has not been asked in the briefing, for sure, to remand or argued inconsistency or whatnot. So I'm being presented with things that actually weren't presented to the court. But in connection with Ross, there are several problems, and it's an alternative ground for affirmance of claims 1 to 60, I suppose, and it's a ground for reversal that we're requesting on claims 61 to 72. And Ross shows, as I said, this ATM you feed the dollars in. It expressly teaches diffuse light. It doesn't work in a printing press. It scans over time, not image, and figure out if it matches. It does alternating pairs. It's got reds and greens and blues, not take an image all at once. And frankly, if you're looking at one of these printing presses where you're trying to make some type of an improvement, you wouldn't look at Ross. And beyond that, even if you did look at Ross, you wouldn't think it's suitable. Here's the thing that I find most interesting. The best thing that they could find in the prior art to try and invalidate these claims was in an ATM machine for counterfeit detection. It was not even a camera. Somebody might take a picture like this. It's not a camera in the context of a printing press. It's not a camera in the context of industrial machines. It's not a camera of any kind. This configuration where you're taking a complete image is not found anywhere in the prior art. Why is that? It's because it wasn't obvious to do until it was done in this particular machine. It's the first instance where we've seen an actual system where you have a ring around the lens taking an image. So if one asks, what were the errors the board made? Fair question, substantial evidence. One is, look at this, and there is not substantial evidence to show that one of... And the burden of proof is on the people attacking the patent. It's not on the patent owner. The only evidence that was submitted was the Seymour Declaration. And you read the board opinion and you think that the other side submitted it. No, the Seymour Declaration is from the patent owner saying these are the advantages the invention gives. And the board comes in and says, those are the reasons you would do it in the prior art. That's hindsight. There's not a teaching or a suggestion in the prior art that any of these things would be useful. So what the board says is, first of all, is a high level of skill. Where that comes from, I don't know. You won't find it in the briefing. That I did look for last night. And they say, because it's a high level of skill, what was put in front of the board was a bachelor's degree and some experience, which I personally don't regard as a high level. I don't mean to degrade it, but it's not like Ph.D.'s and many, many years of experience. So the board says that, and then they say, it would be obvious to increase light. No support for that. Therefore, multiple light sources. No support for that. Therefore, multi-directional. No support for that in the prior art. Therefore, a certain configuration. No support for that. Therefore, circular. Why not a big bank of lights if you want to increase lights, rather than a circular configuration? Only support for a circular configuration, ROS, the ATM Counterfeit Detection System. I respectfully submit, you'd look at all these other things, and if you're going to go to LEDs, you'd have a bank of LEDs. And then the last thing in connection with that is, for the secondary factors, the board says no nexus was shown. Again, the board looked at Seymour to take the advantages of the invention and call it a motivation, then ignored the rest of Seymour, where he said one wouldn't look at ROS. This isn't obvious in light of what was going before. This isn't the type of system that would do, which I would suggest is not substantial evidence. Thank you. Counsel will hear from the patent office now. Mr. Johnson? So you're going to tell us why there was no inconsistency here. That's correct, Your Honor. May it please the Court. We'll start with QuadSec's focus on the operations of ROS. The rejection did not call for the ROS's operation. It didn't call for reliance upon the pattern in which the lights focus on ROS. It merely relied upon ROS's configuration of the lights. In essence, the combination is Sanyo's light, which discloses a steady light that remains on during illumination with additional lights placed in a known configuration. That configuration is ROS. Now, taking that as a given for present purposes, why was ROS analogous art for 61 through 72 but not found to be analogous art for 1 through 60? Okay. Well, Your Honor, ROS was not found. If I understand the structure of the arguments here, assume that the appellant loses on the argument that the printing press is not part of the limitations of the claims, 1 through 60. Nonetheless, that gives the appellant the second argument, which is that ROS is analogous art, and even if the first 60 claims are to a printing press, the analogous art argument comes in and says ROS applies, which is exactly, as far as I can see, what the board found with respect to claims 61 through 72. So why isn't there a fundamental inconsistency in the board's approach? Well, what the board did was it focused its analysis as it relates to claim 1 on printing press. Right, and then stopped. It didn't go any farther. It did not. Why not? It could have. It should have, shouldn't it? Well, because it decided that it was going to reverse because Maruyama did not disclose a printing press, it decided that it would not also address ROS. It very well could have addressed ROS as it relates to analogous art and come up with the same analysis that it did for claim 61.  It's finding that ROS is analogous art because it deals with the same invention as what the claimed inventor dealt with. It dealt with the same problem. The problem that the inventor dealt with here is how do you illuminate a substrate that's moving? Well, that's what ROS does. It has lights that enable the user to illuminate the substrate that's passing through it. So why shouldn't we reverse on the principal appeal and affirm on the cross appeal? Well, because... To bring these similar claims under rejection by the same references. No, I understand the court's question, and I think that part of it relates back to why Sanyo was not relied upon as it relates to claim one. And what's the answer? When you look at the prosecution history, you see here that this is an inter-parties re-exam. And in these sort of re-examinations, the examiner relies heavily upon proposed rejections. And here, the examiner relied upon QIPC's proposed rejection in the re-examination. I understand that, but it would be different if they hadn't raised it at all anywhere. At least the board considered Sanyo with regards to 6172. Why wasn't it incumbent upon the examiner or the board to look at it and say, we need to look at this reference in combination with the other ones as well? Yeah, I think that it was just overlooked, Your Honor. And what happened here is that... What do we do with that? I don't understand what we do with that. Overlooked by the board or by the party? By all the parties, especially QIPC, because the examiner was relying upon the proposed rejections of QIPC. But if the examiner is aware of Sanyo, doesn't the examiner have a duty to look at it in reference to the other claims? Because they're very, very similar. I mean, I think you agree they're very similar. Why didn't the examiner look at it? Again, it gets back to the type of proceeding that we're dealing with here, where the examiner was relying upon the proposed rejections of QIPC. Well, is that appropriate? In this context, that is what normally takes place, where there's a heavy reliance upon proposed rejections. But taking it a step further, QIPC proposed a rejection for Sanyo only with respect to Claim 61. QIPC did not also... Well, we've heard lots of explanations of why we're here, but the question is we have to decide what to do with it. Right. And I completely agree with this point. Why is it an error for the board not to have looked at Sanyo with regards to Claims 1 through 60? Well, I think that it was simply an oversight, and none of the parties picked up on it, not QIPC and not the examiner. What do you mean by oversight? Do you mean oversight in terms of we can't look at it, oversight in terms of it's probably harmless, or oversight that it is an error? Well, oversight in the sense that QIPC did not make the rejection, and so the examiner did not identify that as a reference for... Is that a waiver argument? For Claim 1, Your Honor. And so it is a completely... Do you have support precedent that says that if they don't make a specific reference that they've waived reliance on it forever, or at least in the proceedings? I don't have anything along those lines other than a simple waiver doctrine itself. But they had a number of opportunities to propose a rejection based upon Sanyo for Claim 1, and at every turn what they submitted to the office was simply a defense for the fact that Marijana actually teaches a printing press, as opposed to saying, hey, and by the way, look at Sanyo. Sanyo also teaches... But I take it that while that may be true of Sanyo, that, well, you can correct me if I'm wrong, I may be wrong about this, but I understood that QIPC was arguing that Ross is analogous art, and that with respect to not only Claims 61 through 72, but also 1 through 60. Am I correct on that? I believe that is their argument, and that would make sense, Your Honor, based upon the findings made in the book. So they don't really need Sanyo, do they? If they're right that Ross is analogous art, it doesn't matter if you don't need Sanyo and you don't need Marijana, because Ross, if it's analogous to a printing press, then you're done, aren't you? I would agree with that analysis, Your Honor. Why shouldn't we then reverse on the first 60 claims? Based on that analysis, I would agree with the Court. You would agree with the Court that that analysis is correct and that that analysis would drive us to reverse the first 60 claims? That seems to make sense to me, Your Honor. Anything further, Mr. Johnson? You have a little short time left. Can I just ask you, sorry, I don't mean to eat up your time, but I'm a little confused about the Board's reasoning about Claim 18, which it rejected for indefinite, about the lack of support. Why is that indefinite? Right. There's this whole thing about a negative limitation, but I don't understand why saying something lacks support is a negative limitation. It seems like a limitation. Right. What is that issue in Claim 18 is whether or not there is written description support for a claim straight that's supported at the point of elimination. Okay, I get that. It seems like it's a written description thing, but didn't the Board say that it was rejecting it for indefiniteness because it was a negative limitation? Yes, but I think that what they were really getting at is the fact that there's no written description support. Okay. Thank you, Mr. Johnson. I guess we'll hear from Mr. Langford, who has three minutes. Yes, Your Honor. I will be very brief. We agree with Mr. Johnson entirely. We think that the ruling of the Board for Claims 1 through 60 should be reversed and to make it consistent with what has been ruled on by the Board for Claims 61 to 72. I think Ross is analogous, Art, and we argued that throughout, and we argue that here today. One further point on that issue, and that is that we firmly believe that the other prior art patents involving other print control devices, Ripponoff, Elmerick, et cetera, they basically subsume Saneo as well. They're analogous to Saneo, and therefore the Board should have held for 1 through 60 what it held through 1 through 72. The only other thing I would point out is that we, too, believe that this was an oversight, it was a harmful oversight by the Board, and also I think it's already clear because the panel has already stated so, and that is that Claim 1 is extraordinarily close to Claim 61, almost identical. Thank you, Your Honor. Thank you, Mr. Lankford. Mr. Larkin? Why don't we just give him a couple of sentences? They're so closely related. Yeah, okay. We're very zealous to not let cross-appellants argue principal issues, but very briefly focusing on the cross-appeal. Yes, although I would like to address, some relate to both, and so I'd like to address first Judge Bryson's comment. First of all, on the inconsistency, the Board did not find Ross is not analogous. The Board made no finding on Ross whatsoever. The Board found neither shows a printing press, which is unremarkable because an ATM machine, which is Ross, is not a printing press, and under the procedures that we've adopted, you need to actually find all of the elements in the prior art or obvious, and what the Board said was there's no printing press in what's put before it. So it wasn't a question of it's not analogous here and it is analogous there. The Board didn't do that, so there's no inconsistency. Is that true with 61 through 72 as well, that Ross is analogous? The Board called it analogous. It doesn't reach that issue for 1 to 60, nor is that issue relevant. Wait, I don't understand that. Is Ross analogous for 61 to 72 in the sense that it teaches or discloses a printing press, or is it just about the LED? We view it as not analogous. However, the Board did not make that finding or did not rely on that type of finding for claims 1 to 60. I mean, I just read the decision while I was sitting there, and they said the proposed rejection, which is what we're deciding, is what was proposed is Maruyama and Ross. There is no printing press, and the whole idea about hindsight... But I'm asking about 61 through 72 where they did reject, and if they found that Ross is analogous and teaches a printing press there, then for consistency's sake they should have for the first one. What would you do with 61 through 72? What would I do? I'm sorry, I'm eating up your time. Maybe I'm reading this incorrectly, but I thought the reason in 61 through 72 is that Sanyo disclosed the printing press, and they just got to Ross for the LED light. That is what they did for 61 to 72. What you don't have is a proper ground of rejection. Whether Ross is analogous or not is irrelevant to whether either Maruyama or Ross discloses the printing press, which was what the Board found. Then the question is, should the Board have gone beyond the arguments presented to it? And the Board has no obligation to go beyond the arguments presented to it, which was not Sanyo or any other printing press for claims 1 to 60. And if they did have an obligation, what should they have done? Third, or coupled with that is, did the petitioner have an obligation to put it to the Board, or did actually even the appellant have an obligation to request that of this Board, that it go beyond the grounds of rejection? These arguments weren't made, and frankly, Your Honor, if those arguments had been made, the arguments that were made by the patent owner, those would all shift too, and we would have a different appeal. That's why Article III courts come in. They decide the issues that are presented to them, because if the court kind of goes into all these other things that weren't actually requested or argued in the briefing or whatnot, you would have had a different appeal, not just from their side, but from ours. When you say the arguments weren't made, you mean to the Board? Or do you mean to the examiner? To the Board. To the Board, where you're focusing on the Board? Yes, the examiner entered a rejection. The Board reviewed that rejection. That is their mandate. The inter-parties re-exams, the Board has been very careful to review those arguments that were presented. Your Honor asked for authority for the notion, and I can't cite a specific case because it wasn't argued, so I didn't research it, but I do know the statute says you have to put it there, and if you didn't put it there, it fines against you if you could have. Let me, if I could, could I extend the amendment? Let me make sure I understand what your argument is with respect to the role of analogous art in a rejection. I understand that when you have analogous art, what you are saying, if you say it's analogous, is that a person of skill in the art in field number one would have looked to that art naturally in the course of considering the invention and would have found in that analogous art something which, if applicable, if it would render the invention obvious, would be enough to invalidate the claim. So if that's true, if that's the correct way to characterize a finding of analogous art, why is it necessary that there be even a reference to anything with a printing press if Ross is analogous art? Because this Court and the Supreme Court has been explicit. You cannot use hindsight, and so we have to pick through the test. No, no, no, I'm not looking for... I know, Your Honor, and I'll get, if I may. Okay, okay, good. So the test for analogous art is same field of endeavor. This wasn't briefed, but same field of endeavor. It was, it was. Same field of endeavor or reasonably pertinent to the problem to be solved. Right. This is not in the same field of endeavor. So that's your argument. No, no. But assume that it is in the same field, that Ross is in the same field of endeavor as the printing press. Then you don't need any reference that contains a printing press, correct? No, actually you do, because in order to reject something based on the prior art, you need it in the prior art. That's why, in the Patent Office, you have to present the prior art and say, here are two things and the reason to combine. And, by the way, the Board did not find it to be in the same field of endeavor necessarily. It could be reasonably pertinent to the problem to be solved, which is more like what they said, which is illumination. Our response being, if you look to the ATM, you can't just take a piece of Ross. You need to take all of Ross, which is a completely different system, which is why.  We'll take the case under advisement. Thank you, Your Honor.